## Case No. 5,795.

### GREGERSON v. IMLAY.

### [4 Blatchf. 503.] [1]

Circuit Court, S. D. New York.   June 14, 1861.

PATENTS—DAMAGES FOR INFRINGEMENT — AGREEMENT TO COLLECT—CONTINGENT FEE—CHAMPERTY AND MAINTENANCE.

1. Where ·I., the patentee of a patent which had expired, having claims for damages for its infringement, made a written agreement with G., giving to G. the exclusive right to control the claims, and collect or compromise them, G. to bear all expenses, except that I. was to bear the taxable costs of any suit in which a recovery for costs should be had against him, and G. to have, as compensation for his time and all expenses, except such taxable costs, one half of the gross amount he might collect, the rights under the agreement to survive to and against the personal representatives of each party, and the contract not to be revoked except by the consent of both parties in writing, and the agreement was accompanied by an irrevocable power of attorney from I. to G., authorizing G. to sue in the name of I. and conduct the whole business of collecting the damages in all the states of the Union except four:   *Held*, that the contract was tainted with champerty and maintenance, and that a court of equity would not uphold it.

[Cited in Goldsmith v. American Paper Collar Co., 2 Fed. 241.]

2. The case of Prosser v. Edmonds, 1 Younge & C. Ex. 481, cited and approved.

3. The absence of an agreement to indemnify against taxable costs does not make such a contract valid.

4. The fact that the contract was made in New York, and that the common law doctrines concerning champerty and maintenance no longer exist in New York, cannot uphold the contract, as it is to operate in many states where it is clearly void.

5. Even though such a contract might be barely valid at law, a court of equity will lend no countenance to it.

In equity.   This was a motion for a provisional injunction, to restrain the defendant [Richard Imlay] from violating a written agreement made between the parties.   The defendant was the owner and patentee of letters patent for an improvement in trucks for railroad cars.   The patent had expired, but, during its continuance, while the exclusive right to it was in the defendant, a large number of persons, and especially railroad corporations, infringed the rights of the defendant, by building and using cars to which this improvement was attached, without any license from the defendant.   The invention was a valuable one, and the defendant was entitled to recover from the infringers divers sums, as damages for the violations of his rights.   While these claims, or many of them, were outstanding and wholly unadjusted, the defendant entered into a written agreement with the plaintiff [William H. Gregerson], by the terms of which he conferred upon the plaintiff the exclusive right to control these claims and collect the same by suit or compromise, the latter to bear all the expenses of such collection out of his

own pocket, except that, in case he failed to recover in any suit, the defendant was alone to be liable to pay the taxable costs that might accrue against him in such suit.   As a compensation to the plaintiff in full for his time, and for all expenses of the collection and litigation of these claims, including counsel fees and all other fees, except only the taxable costs above referred to, the plaintiff was to receive and retain fifty per cent. of the gross amount he might collect.   The rights which the agreement purported to vest in the plaintiff were to descend to his executors and administrators, in the event of his death before the completion of the business of collection, and in the event of the death of the defendant before that time, they were to be confirmed against his heirs, executors and administrators.   The agreement was not to be revoked or changed, except by the mutual consent of both parties, expressed in writing.   For the purpose of carrying out the agreement and enabling the plaintiff to collect the claims, which existed against persons, in nearly all the states of the Union, the defendant made his power of attorney, authorizing the plaintiff to bring suit in the defendant's name, and countersign discharges, and conduct the whole business of collecting the damages, in all the states except four.   The power referred to the agreement, and was, in terms, irrevocable.   The plaintiff proceeded, in good faith, to execute his part of the agreement, but the defendant becoming, for some cause that did not clearly appear, dissatisfied, attempted to revoke the power and annul the contract, and assume the entire control of the business which he had, in terms, committed to the exclusive control of the plaintiff.   The defendant claimed the right to resume the control of the claims, and denied the right of the plaintiff to interfere therewith.   The bill was brought to perpetually enjoin the defendant from annulling the contract or power, and from in any way interfering with the business of collecting or adjusting the claims.   Upon the bill, and affidavits in support thereof, the plaintiff now moved for a provisional injunction, to restrain the defendant in the premises.

Benjamin Cozzens, for plaintiff.
Samuel Blatchford, for defendant.

SHIPMAN, District Judge.   A variety of points, both in support of and in opposition to this motion, have been raised and ingeniously argued by the counsel, some of which are of an interesting character, but, in the view I take of the case, it is unnecessary to pass upon them.   This is certainly an extraordinary contract, and one which a court of equity should hesitate long before it sanctions.   It is clearly void at common law, for champerty and maintenance, and, although it is quite true that the doctrines of the common law touching the effect of these features

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

upon the validity of contracts have been greatly modified in modern times, yet I think it doubtful if any court of law, much less any court of equity, has ever sustained a contract of this description. This is not the case of an assignment of an interest in an individual claim, or a sale of property in esse which is involved in a legal controversy, but it is an attempted transfer of an interest in indefinite litigious rights, and in claims for unliquidated damages, arising out of torts, indefinite in number and amount, and limited only by territorial boundaries, covering nearly the entire country. Passing by other grave questions that suggest doubts as to the validity of such a contract, it is sufficient to say, that it is one that no court of equity should countenance, inasmuch as it is tainted with champerty and maintenance. This view of the duty of courts of equity is fully supported by the chief baron of the exchequer, in the case of Prosser v. Edmonds, 1 Younge & C. Ex. 481, where he remarks, that such courts should lend no countenance to agreements which partake in any manner of champerty, although they might be barely valid at law. Without impugning the good intentions of either party to the contract before me, and even assuming that the unmolested execution of this agreement by the plaintiff would be highly beneficial to the defendant, still it is easy to see that such contracts are liable to great abuse. To arm one individual with exclusive and unlimited power over the claims of another for unliquidated damages arising out of numerous torts, with power to sue and press the claims to judgment in all courts, in the name of the injured party, not for a fixed or a reasonable compensation to be determined by the amount of labor performed and the expense incurred, but for what might prove an enormous bounty proportioned to the amount that might be recovered, while at the same time the other party is stripped of all power to adjust, settle or discharge those claims, of the justice of which he ought to be the better judge, would be detrimental to the peace of society and the safety of individuals, and against public policy.

It may be claimed, that this contract is not champertous, inasmuch as the plaintiff does not agree to indemnify the defendant against taxable costs. This distinction has sometimes been taken; and some of the elementary treatises seem to regard it as valid. But the doctrine was pretty effectually exploded in the case of Lathrop v. Amherst Bank, 9 Metc. [Mass.] 489. Indeed, where the power over the prosecution of the claims is, as claimed in the present case, exclusive and irrevocable, the exemption of the prosecutor from liability for costs, aggravates rather than relieves the mischievous character of the contract.

The case of Call v. Calef, 13 Metc. [Mass.] 362, was one in which a contract was involved, resembling in many features the one now before me. The facts were these:

Leeds & Co. claimed to own the exclusive right to use a patent planing machine in the town of Manchester, New Hampshire, in which town Baldwin & Stevens were infringing upon their rights by the use of another machine. Call, the plaintiff, had an interest in the same patent in Lowell, and Leeds & Co. executed a power of attorney to him, authorizing him, by suit or otherwise, to restrain Baldwin & Stevens from using the machine in Manchester, and promised him one-half of what he might recover or collect for his compensation. It was claimed, on a subsequent trial, in which this agreement was drawn in question, that it was void for champerty and maintenance. The court held it valid, upon the sole ground, however, that, as the unauthorized use of the machine in Manchester would diminish the profits and value of the patent in the adjoining town of Lowell, where Call owned the right, the latter had a direct interest in preventing the infringement in Manchester, and that this interest supported the validity of the contract. It is needless to remark that, in the present case, the plaintiff had no interest whatever in the claims committed to his control by the plaintiff, except what arose out of the contract itself.

I am aware that, in Sedgwick v. Stanton, 4 Kern [14 N. Y.] 289, Selden, J., in an able opinion, maintains that the doctrines of the common law touching champerty and maintenance are pretty effectually swept away in New York, by state legislation. But, although the contract under consideration was made in New York, still the lex loci cannot control the determination of the present case. The contract was, by its terms, to be executed in all the states of the Union except four, and the effect of the injunction asked for would be to support the contract in many states where it is clearly void. But, as already intimated, if the contract were barely valid at law, still, by applying the salutary doctrines of the English court of exchequer, in Prosser v. Edmonds, in which I fully concur, I should feel compelled to deny this motion.