### JONES v. PETTINGILL et al.

(Circuit Court of Appeals, First Circuit. July 16, 1917.)

#### No. 1173.

1. PARTNERSHIP ⬤=203—ACTIONS BY FIRM—DEATH OF PARTNER—EFFECT.

Under Rev. St. § 955 (Comp. St. 1916, § 1592), providing that, when either party dies before final judgment, the executor or administrator may, if the cause of action survives, prosecute or defend the suit, and section 956 (Comp. St. 1916, § 1593), providing that, if there are two or more plaintiffs or defendants in a suit where the cause of action survives to the surviving plaintiff or against the surviving defendant, the action shall proceed at the suit of the surviving plaintiff against the surviving defendant,

where a contract sued on was made with the two plaintiffs as partners, and any interest acquired by one dying before judgment survived to the other, the suit was properly permitted to proceed in the survivor's name as surviving plaintiff, without the deceased party's executor or administrator becoming a party.

2. CHAMPERTY AND MAINTENANCE ☞5(7)—RAISING OBJECTIONS.

Where a contract, challenged as contrary to good morals, champertous, and void, is such a contract as a court of equity should not enforce, the objections on this ground might be considered by the District Court of its own motion, whether suggested by the parties or not.

3. APPEAL AND ERROR ☞173(6)—REVIEW—QUESTIONS NOT RAISED BELOW.

An appellate court may consider such objections of its own motion, whether raised below or not.

4. COURTS ☞405(17)—CIRCUIT COURT OF APPEALS—ASSIGNMENT OF ERRORS—NECESSITY.

Under the express provisions of rule 11, and of rule 24, par. 4 (150 Fed. xxvii, xxxiii, 79 C. C. A. xxvii, xxxiii) of the Rules for the First Circuit, the court may, at its option, notice plain errors, though not assigned.

5. CHAMPERTY AND MAINTENANCE ☞5(3)—AGREEMENTS WITH ATTORNEYS.

A contract between an attorney and client for contingent compensation for professional services, whereby the attorney is to pay the entire expense of litigation, control its settlement, and be jointly and equally interested with the client in the property involved, when recovered, is so far contrary to the policy of the law that a court of equity will not enforce it.

6. CONTRACTS ☞129(1)—PUBLIC POLICY—AGREEMENT AS TO SETTLEMENT OF SUIT.

A stipulation in such an agreement by attorneys for a contingent fee, purporting to invalidate any settlement of the attempted litigation by the client, unless made in the attorneys' presence and with their consent, is against public policy and void.

7. CHAMPERTY AND MAINTENANCE ☞5(6)—AGREEMENTS WITH ATTORNEYS.

A contract between an attorney and client for contingent compensation, whereby the attorney is to pay the entire expense of litigation, control its settlement, and be jointly and equally interested with the client in the property recovered, is obnoxious to the policy of the law of Porto Rico, in view of Civ. Code 1902, § 1362, prohibiting officials of justice from acquiring the property and rights in litigation, and including in this prohibition lawyers with regard to the property and rights which may be the object of the litigation in which they take part.

8. CHAMPERTY AND MAINTENANCE ☞5(3)—AGREEMENTS WITH ATTORNEYS.

A bill founded directly upon such agreement, and seeking to establish alleged rights under it, cannot be maintained in a court of equity, though not brought against the client, but against a purchaser of her interest in the property recovered.

9. APPEAL AND ERROR ☞162(1)—WAIVER OF RIGHT TO APPEAL—ACCEPTANCE OF BENEFITS.

Decrees adjudged that plaintiff owned an undivided interest in a plantation, and was entitled to redeem such interest from defendant upon payment to him of a specified amount, and decreed that plaintiff pay defendant such amount, and that the receipt taken therefor be lodged in the registry of the court. Three days after entry of the decree there was filed an acknowledgment, signed by defendant, that he had received the amount ordered paid. The following day defendant petitioned for reconsideration of the decrees, and after denial of his petition he appealed, so conditioning his appeal bond as to make it operate as a supersedeas. It appeared that he mistakenly supposed himself under the necessity of receiving the money and filing the receipt. *Held*, that there was no such unmistakable acquiescence on defendant's part in the decrees appealed from, or acceptance of benefits thereby, as deprived him of his right to appeal; the receipt not hav-

ing been understood and intended as such acquiescence, and the court still having the power to restore both parties to their rights by directing proper repayment.

10. JUDGMENT ⊘⇒649—CONCLUSIVENESS—NATURE OF JUDGMENT.

In a suit to recover plaintiff's share of a plantation, which her father, O., was occupying at the time of his death under a lease and obligation of purchase and sale between him and A., the court entered an order reciting that A. desired only payment of whatever might be found due him, and to hold a lien until such payment should be made, and that so to treat the claim would eliminate considerable controversy, and directed that the property be considered as belonging to O.'s succession, subject to A.'s mortgage for such amount as might be found due by the court and thereafter paid A. by the receiver then in charge. *Held*, that it was not apparent how the court, even with the consent of the parties, could thus transform A.'s claim into a conveyance to O.'s heirs with a mortgage back from the heirs, but, in any event, the order embodied only a proposed compromise agreement, never carried out, and wholly ineffective to change the nature of O.'s interest in the plantation; the court never having determined the amount due under the so-called mortgage, and no steps towards such determination having ever been taken.

Appeal from the District Court of the United States for the District of Porto Rico; Peter J. Hamilton, Judge.

Suit by N. B. K. Pettingill and others against Walter McK. Jones. From a decree in favor of complainants, defendant appeals. Reversed and remanded, with directions.

Francis E. Neagle, of New York City, and Woodward Emery, of Boston, Mass. (Martin Gilbert, of Boston, Mass., on the brief), for appellant,

N. B. K. Pettingill, of Tampa, Fla., for appellees.

Before DODGE and BINGHAM, Circuit Judges, and MORTON, District Judge.

DODGE, Circuit Judge. The rights asserted by the appellees, plaintiffs in the District Court, are based upon a contract in writing, made at Ponce, March 20, 1905, between them and Adelaida Olivieri. Her agreements were as follows:

"I agree to pay to Messrs. Pettingill and Leake, my lawyers, the half of what I may receive if the judgment of the court is favorable in a suit which I am going to bring in the Federal Court against Antonio Olivieri, executor of Felix Olivieri, if said lawyers pay all the costs and expenses of said suit, and carry it to a conclusion. In case of settlement the lawyers shall receive the half of whatever sum is paid to me in settlement of their fees. In accordance with the judgment of the court, I will pay to them and divide with them in proportion of one-half of whatever I may receive by order of the court."

Their agreements were as follows:

"We agree to bring this suit in favor of [said Adelaida], paying all costs and expenses, and carrying it to a conclusion, either by settlement or judgment of the court."

The final clause of the contract, to which both the parties subscribed, was as follows:

"Moreover it is agreed that, in case of settlement by agreement, such settlement shall not be valid, if not made in the presence and with the consent and assistance of the two parties to this contract."

Felix Olivieri, referred to in the agreement, was Adelaida Olivieri's father. The contemplated suit against his executor was brought and carried to a conclusion by Pettingill and Leake, in accordance with the agreement. In it she claimed one-ninth of his real estate as his heir; also a legacy of $5,000 given her, and charged upon his real estate, by his will. The final judgment of the court, rendered May 18, 1910, was in her favor. She was adjudged to be owner of one-ninth of her father's interest in a coffee plantation called Limon, and entitled also to a charge upon the whole of his said interest in the sum of $5,000.

The above litigation, carried on in the Federal District Court for Porto Rico, involved the appointment of a receiver, who took custody of the Olivieri estate, including so much of the Limon property as is here in controversy. This, although Olivieri did not own it, he was occupying at the time of his death under a "lease and obligation of purchase and sale," made between him and certain Alvarados, its owners, October 24, 1900, to expire July 31, 1908. As is further stated below, there was an attempt during said litigation to deal with this as if it had in fact belonged to the Olivieri estate subject to a mortgage in favor of the Alvarados.

Pending said litigation, and while said property was in the receiver's custody, Jones acquired from the Alvarados all their rights in it. Later, after the above final decision, he also bought from Adelaida Olivieri all her interest in it and in the legacy charged upon her father's estate in her favor, according to said decision. In these acquisitions one A. B. Marvin was associated with him, but Marvin need not be further referred to; Jones having since become sole owner of whatever they both so acquired.

The present suit was brought by the plaintiffs in the Federal District Court for Porto Rico, July 16, 1910. Adelaida Olivieri, her husband, Jones, and Marvin were made defendants. We are now concerned only with the relief sought against Jones. Alleging that the rights in Limon acquired by him as above from Adelaida Olivieri had been acquired with notice of their above contract with her, they asked that he be enjoined from transferring what he had so acquired; that they be decreed to be "the equitable owners of an undivided half interest in and to" said $5,000 charge upon Limon; that "the attempted cession and assignment thereof" by her to Jones be declared "fraudulent, and void" as against them; that they be decreed entitled to a cession of Jones' rights acquired from the Alvarados, as above, upon the same terms upon which Jones acquired them, or upon payment of the amount legally due thereon; that Jones be ordered to make such cession upon payment tendered; and for specific performance of their above contract with Adelaida Olivieri.

[1] The plaintiff Leake died in April, 1912, after the present bill had been filed, but before the entry of any decree in the suit. No executor or administrator has become party in his place, according to Rev. St. § 955 (Comp. St. 1916, § 1592), and Jones has contended that all the proceedings since Leake's death are void, because the suit has not been so revived, nor carried on by the surviving plaintiff, in pursuance of Rev. St. § 956 (Comp. St. 1916, § 1593). But we think it sufficiently

clear that the contract was with the two plaintiffs as partners, that any interest acquired therein by Leake would have survived to Pettingill, and that the record shows the suit to have proceeded since Leake's death in Pettingill's name as surviving plaintiff. In the District Court's rulings regarding this question, assuming that Pettingill and Leake acquired any interest in the property in dispute by virtue of their contract, we find no error.

The District Court, on March 21, 1914, decreed that Pettingill was "entitled to relief under the bill"; that he had acquired and then owned an undivided half interest, equally with Jones, in so much of Limon as Adelaida had conveyed to Jones, as above, both their interests having been acquired "by purchase from Adelaida Olivieri"; also that he was entitled to redeem from Jones one-half of one-ninth of her father's interest in Limon, upon payment to Jones of a proper proportion of "the sum found to be due by" Olivieri's heirs "upon the Alvarado mortgage," crediting against such sum the net proceeds of the property while held by Jones, less the value of Jones' improvements. Reference to a master was ordered, to ascertain the amount so to be paid Jones for the purpose of such "redemption."

The master having reported said amount to be $1,464.75, the District Court, on March 1, 1915, confirmed his report, and further decreed that Pettingill pay Jones said amount, the receipt taken therefor to be lodged in the registry of the court.

From these decrees, both entitled "Final Decree," after a motion for reconsideration thereof had been denied May 29, 1915, Jones appealed to this court on July 8, 1915.

The principal question raised before us was not raised by the answer to the bill, nor at any time during the proceedings in the District Court, until Jones alleged in his petition for reconsideration, above mentioned, as ground for reconsideration, that the District Court had erred in not holding the contract sued on "contrary to good morals, champertous, and void," and therefore a contract upon which no recovery could be had. In denying the petition the District Court held, as appears from its opinion dated May 29, 1915, that Jones could not attack the validity of the contract for the first time after final decree, nor at any time "when not a party to the contract"; and discussion of its validity was regarded as unnecessary. It also held Jones estopped in any case from raising the question, by acceptance from Pettingill of the amount required for "redemption" of the interest claimed by him, as determined by the master.

[2-4] The above objections to the validity of the contract raise a question of public policy, apparent from the record and involving no disputed questions of fact. The contract is annexed in full to the bill, both in Spanish and in English. If it appears from the record to be such a contract as a court of equity should not lend its aid to enforce, the above objections go to the foundation of the rights asserted in the bill, and are objections such as the District Court might have considered of its own motion, whether suggested by the parties or not, and such as might have been urged in arrest of judgment. They are also such objections as an appellate court may consider of its own motion,

whether raised below or not. Primeau v. Granfield, 193 Fed. 211, 114 C. C. A. 549; Griggs v. Nadeau, 221 Fed. 361, 363, 137 C. C. A. 189. It is said that they are not properly raised by the assignments of error; but this court may, under its rules 11 and 24, paragraph 4 (150 Fed. xxvii, xxxiii, 79 C. C. A. xxvii, xxxiii), notice at its option plain errors not assigned, and has repeatedly done so.

[5] That this is a contract which "would have been regarded as champertous and void under the old common law" is conceded; but it is said that there is no jurisdiction wherein the common-law rule has not been changed to a large degree, the extent of change varying in different jurisdictions. We shall assume, in view of Stanton v. Embrey, 93 U. S. 548, 23 L. Ed. 983, McPherson v. Cox, 96 U. S. 404, 24 L. Ed. 746, Taylor v. Bemiss, 110 U. S. 42, 3 Sup. Ct. 441, 28 L. Ed. 64, Ball v. Halsell, 161 U. S. 72, 80, 16 Sup. Ct. 554, 40 L. Ed. 622, and Nutt v. Knut, 200 U. S. 15, 21, 26 Sup. Ct. 216, 50 L. Ed. 348, that the contract is not to be held either void or voidable, merely because the attorneys' compensation is made contingent upon success or amount of recovery; it having been free, so far as appears, from fraud, misrepresentation, or unfairness. The above decisions relate to contracts for services in prosecuting claims against the United States or before tribunals acting under the authority of the federal government.

But the agreement that the attorneys shall have a contingent fee of 50 per cent. is by no means the most objectionable feature of this contract. They undertake in it to pay all the costs and expenses of the contemplated suit, and it provides that no settlement by their clients shall be valid, unless they are present and consent. Further, although there is no assignment by her to them, in express terms, of part of her interest, she is made to agree with them, who do not claim to have had any interest of their own in the property, "to pay to and divide with them in proportion of one-half of whatever I may receive by order of the court." The construction of this agreement which they assert in paragraph II of their bill is that they—

"should have and be entitled to a one-half interest in whatever property or other assets of said estate they might succeed in recovering for [her]."

Paragraph V of their bill further alleges that:

"Upon the entry of the final decree [they] became entitled under and by virtue of the contract aforesaid to an equitable undivided one-half interest in and to said lien upon said plantation Limon, and whatever amount might be ultimately found to be due thereon, and in and to the said undivided one-ninth interest adjudged to [her] in the general assets of the estate."

And this was the construction adopted by the District Court, as appears by its decree March 21, 1914, the substance whereof has been already stated. In an opinion dated March 9, 1914, directing the entry of said decree, after holding that Jones had bought in subordination to the plaintiff's claim under said contract, it is said that Adelaida Olivieri could under the circumstances—

"sell her interest in the property, but could sell no more than her interest. She had already vested [the plaintiffs] with a half interest, and could pass only the other half interest to Jones. * * * It follows that [the plaintiffs] are cotenants of this property."

It may be that there are jurisdictions in which the local legislation would afford ground for upholding some even of the above provisions; but, generally speaking, we think it clear that a contract between attorney and client, for contingent compensation for professional services, whereby the attorney is to pay the entire expense of litigation, to control its settlement, and to be jointly and equally interested with the client in the property involved when recovered, is a contract so far contrary to the policy of our law that a court of equity will not enforce it.

In Gregerson v. Imlay, 4 Blatchf. 503, Fed. Cas. No. 5,795, Judge Blatchford refused to enjoin one party to a contract having similar features (though not between attorney and client) from breaking it, and declared that, even if the contract might be barely valid at law, a court of equity should lend no countenance to it, because tainted with champerty and maintenance.

In McPherson v. Cox, 96 U. S. 404, 24 L. Ed. 746, the agreement between attorney and client had been for a fixed sum, contingent upon success, to be paid out of the proceeds of land in litigation. An objection that the agreement was champertous was held sufficiently answered by the fact that the attorneys—

"did not agree to pay any of the costs, they did not agree to take any part of the land, which was the subject of the suit, for their compensation, nor did they agree to take anything but money." 96 U. S. 416.

In Peck v. Heurich, 167 U. S. 624, 17 Sup. Ct. 927, 42 L. Ed. 302, a deed in trust was held void for champerty, because, after providing that the trustee should sue for, take possession of, and sell the granted land, it further provided that one trustee, an attorney, should retain out of the proceeds one-third, after paying out of said one-third all the trustees' costs and expenditures. It was the agreement by the attorney to take as his compensation a part of the thing in dispute, and to prosecute the litigation at his own expense, which was regarded as making the deed embodying it contrary to public policy, and therefore void. The court concurred in the condemnation of such agreements expressed by the Court of Appeals for the District of Columbia in Johnson v. Van Wyck, 4 App. D. C. 294.

In Casserleigh v. Wood, 119 Fed. 308, 56 C. C. A. 212, the Court of Appeals for the Eighth Circuit, relying on the last-cited decision, affirmed a refusal to order specific performance of a contract to prosecute litigation for a contingent fee payable in kind out of what should be recovered, and also to pay all costs of the litigation. It was said that, even if an action at law would lie upon such a contract, it was so far tainted with illegality that a court of equity ought not to enforce it.

[6] As to the stipulation purporting to invalidate any settlement of the contemplated litigation by the client, unless made in the attorneys' presence and with their consent, we can have no hesitation in regarding it as against public policy and void for that reason. The District Court for Porto Rico so regarded a stipulation to the same effect, in a contract similar in many respects to this, in Rodriguez v. Cueli, 1 Porto Rico Fed. 272, 275. In re Snyder, 190 N. Y. 66, 82 N. E. 742, 14 L. R. A. (N. S.) 1101, 123 Am. St. Rep. 533, 13 Ann. Cas. 441, and Wel-

ler v. Jersey City, 68 N. J. Eq. 659, 61 Atl. 459, 66 Ann. Cas. 442, may also be referred to.

[7] While the local law here involved—i. e., the law of Porto Rico—deals with the above questions from a somewhat different point of view, and its policy is to be gathered more from Codes based on the civil law, or from commentators thereon, than from reported decisions, we find no reason to believe that contracts like that here in question are regarded in Porto Rico as any less obnoxious to the policy of the law than they are in the United States. The well-recognized grounds for believing danger to the public interest to be inherent in them, can be no less strong there than here.

By section 1362 of the Porto Rican Civil Code of 1902, which took the place of an earlier Code containing like provisions, judges, public prosecutors, clerks of courts, "and officials of justice" are made incapable of acquiring by purchase the property and rights in litigation before the court in which they exercise their respective duties; including in this prohibition acquisition by assignment. The same prohibition expressly includes—

"the lawyers, with regard to the property and rights, which may be the object of the litigation, in which they may take part by virtue of their profession and office."

The Spanish Civil Code contains similar prohibitions, and the Spanish authors agree that under Spanish law an agreement by an attorney to prosecute litigation for an interest in the property involved is forbidden, and therefore void.

[8] It is said that the above objections can at most render the contract voidable by Adelaida Olivieri, and that they cannot avail Jones. But if, as we hold, they render it incapable of enforcement in a court of equity, whatever validity might be conceded to it in a suit at law against her, the present bill, which is founded directly upon it and seeks to establish alleged rights under it, cannot be maintained. Burnes v. Scott, 117 U. S. 582, 6 Sup. Ct. 865, 29 L. Ed. 991; Peck v. Heurich, 167 U. S. 624, 17 Sup. Ct. 927, 42 L. Ed. 302, above cited.

[9] A motion to dismiss this appeal, because not taken in time, has not been insisted on; but Jones' acceptance of the amount ordered to be paid him by the decree entered March 1, 1915, is relied on as estopping him from claiming or maintaining it; and, as has been stated, this was the view taken by the District Court.

Three days after said decree was entered—i. e., on March 4, 1915—there was filed in court an acknowledgment in writing, signed by Jones, that he had received from Pettingill $1,464.55, "being in full compliance with the order of this court, upon the final decree herein, made upon March 1, 1915, in which said complainants were directed to pay me said sum." As has appeared, the decree required such receipt to be filed in the registry. On April 5th Jones' petition for reconsideration was filed, on May 1st, it was answered, and on May 29th the court denied it. Except so far as indicated by what appears as above from the record there is nothing to show acquiescence by Jones in the provisions of the decree. He does not appear to have otherwise acknowledged satisfaction thereof by Pettingill, nor to have taken any

other step indicating acquiescence. That the above receipt was not understood or intended by him as constituting such acquiescence is indicated by his subsequent application for rehearing and appeal. His appeal bond is so conditioned as to make it operate as a supersedeas. From the opinion filed by the District Judge in denying a rehearing, it appears that Jones mistakenly supposed himself under the necessity of receiving the money and filing the receipt therefor.

Believing, as we do, that the District Court ought not to have entertained the bill, we do not think that such unmistakable acquiescence on his part in the decrees appealed from appears, or acceptance of benefits thereby, as must involve the loss of his rights as appellant. The right to appeal is a right not to be held waived, except upon clear and decisive grounds. The District Court, which holds his receipt, can, upon reversal, restore both parties to their rights as they stood before said payment was made, by directing proper repayment to Pettingill. Erwin v. Lowry, 7 How. 172, 184, 12 L. Ed. 655.

[10] The view of the case which we take renders it unnecessary to consider at length a question to which much of the argument has been devoted, viz. whether or not the District Court erred in treating that part of the Limon property not owned by Felix Olivieri at the time of his death, and afterward acquired by Jones from its owners, as in fact belonging to Olivieri's heirs, subject to a mortgage in favor of Jones' grantors, the Alvarados, so that Jones could take from them only a mortgagee's interest, subject to a right of redemption in the Olivieri heirs.

The District Court held that an order entered by it on June 7, 1907, in the litigation to recover Adelaida's share of the Olivieri estate, to which the Alvarados became parties, had so adjudged; that this order had become final as to all the then parties in interest, and had established the above situation as res judicata for the purposes of the present case. It is upon this holding that the provisions of the decrees appealed from regarding redemption are based.

Said order of June 7, 1907, after reciting that the Alvarados desired only payment of whatever might be found due them from Olivieri's estate, and to hold their lien upon the premises leased to Olivieri until such payment should be made, and that so to treat their claim would eliminate considerable controversy as to the construction of the instrument dated October 24, 1900, under which Olivieri held the property, directed that said property be considered as belonging to the Olivieri succession subject to the mortgage of said Alvarados, for such amount as might be found due by the court and thereafter paid said Alvarados by the receiver then in charge.

We fail to understand how the court could in any event have had any power, even upon the consent by all parties then before it, which does not appear, thus to transform the Alvarado claim under their agreement with Olivieri, whatever its nature, into a conveyance by them to Olivieri's heirs, with a mortgage back from said heirs to them.

But it is enough to say that said order clearly appears to have embodied only a proposed compromise agreement never carried out. The court never determined under it any amount to be due under said

"mortgage," nor were any steps toward such determination ever taken. Jones' contention in the present suit that such order was wholly ineffective in the present suit, so far as he was concerned, ought, in our opinion, to have been sustained. In so far as the decrees appealed from are based upon the existence of the supposed "mortgage," or any alleged right in Pettingill to redeem from it what Jones bought from said Alvarados, we hold them erroneous. It follows that the above payment to Jones ought not to have been ordered or made.

The decrees appealed from are reversed, and the case is remanded to the District Court, with directions to dismiss the bill as to the appellant, Jones, upon payment by him of the amount for which his receipt on file therein is given, with interest, either to said Pettingill or into court for him; and said appellant recovers his costs of appeal.

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes