FRANCESCHI v. JONES et al.

(Circuit Court of Appeals, First Circuit.   March 13, 1918.)

No. 1282.

1. MORTGAGES ⟨⟩33(5)—CONVEYANCE AND LEASE TO GRANTOR—EFFECT.
   Where the record owners of land, to which they had taken title by absolute conveyance leased it to their grantor with option to purchase, they were not mortgagees, but owners of the land.

2. JUDGMENT ⟨⟩649—ORDER NOT ACTED ON—EFFECT.
   Where, in proceedings for the settlement of the estate of one having a lease on Porto Rico lands with an option to purchase, the court made orders which by agreement of the parties treated the lessors as mortgagees, it being agreed that if payment was not made within six months the lessors should have the right to set the same aside, such orders, not having been acted on, cannot be deemed to have divested the lessors of their title so that the heirs of the lessee could convey title to the property subject only to the rights of the lessors as mortgagees, for the order really only evidenced a provisional agreement for the sale of the lands.

Appeal from the District Court of the United States for the District of Porto Rico; Peter J. Hamilton, Judge.

Bill by Antonio Franceschi y Franceschi against Walter McK. Jones and others. From a decree of the District Court of the United States for the District of Porto Rico, dismissing the bill, complainant appeals.   Decree affirmed.

Jose A. Poventud, of Ponce, P. R., for appellant.

Francis E. Neagle, of New York City (Woodward Emery, of Boston, Mass., on the brief), for appellees.

Before DODGE, BINGHAM, and JOHNSON, Circuit Judges.

DODGE, Circuit Judge.   Franceschi appeals from a decree of the District Court of March 2, 1916, dismissing a bill in equity filed by him December 17, 1915.   In the bill he alleged that he owned an undivided eight-ninths of a plantation containing about 444 acres, called "Limon," then and since July 21, 1910, in the possession of Jones, here appellee; and that Jones, except as to an undivided interest, not exceeding the remaining one-ninth, had only a mortgagee's interest therein.   He asked that Jones be ordered to deliver possession to him as majority owner, and that he be allowed to redeem the property from the alleged mortgage.   Other allegations and prayers of the bill need not be here stated.

Jones was owner of the whole estate in dispute, according to the conveyances appearing of record, having bought it from its prior record owners, the succession of Vicente Alvarado; whose recorded conveyances to him are dated May 29, 1910, and March 2, 1911.   The first of these conveyances transferred the property to him subject to all the equities which may have originated from a suit in equity, also in the District Court, known as "Olivieri v. Olivieri," and further referred to below.   By their second conveyance, however, the grantors

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

withdrew all such reservations and conveyed to Jones full title without reservations.

Franceschi's assertion that Jones' rights were only those of a mortgagee rests wholly upon an order made on June 7, 1907, by the then judge of the District Court, in the case referred to. A final decree in said case, entered May 18, 1910, is alleged to have confirmed said order of June 7, 1907. Jones has denied, in his answer to the bill, that said order or final decree was effective for any such purpose. The circumstances under which they were made may be stated as follows:

On October 24, 1900, the widow and children of Vicente Alvarado, constituting his succession, and being the then owners of the Limon estate, here involved, leased it to Felix Olivieri for eight years, from August 1, 1900, at an annual rental of $1,872, agreeing in the lease to sell it to him at any time, within the term thereof for $15,600.

Olivieri died in 1901, in possession under said lease, but in arrears for the rent, and never having exercised his right to purchase. Olivieri v. Olivieri was a suit between his heirs to settle their respective claims to share in his estate, including this Limon property. A receiver appointed by the court assumed possession of all the property in dispute. On June 5, 1907, the above-mentioned lessors filed an intervening petition in the suit, praying for a decree directing the receiver to turn over the Limon estate to them, alleging that they were its owners, and that the above lease and agreement were no longer in force; $4,130 being overdue for rent, and no steps having been taken towards the purchase contemplated. The lease or agreement provided that it should be considered as rescinded in case of failure to pay the rent, and the lessors have the right to take immediate possession.

Judge Rodey, the then District Judge, before said petition had been answered, undertook, after conference with the parties or their counsel, to enter the order or decree here in controversy, on June 7, 1907. After reciting, among other things, that the intervener's counsel had announced that all they prayed in the premises was "The payment to them of whatever sum may be found to be due them by the Olivieri estate, and to hold their lien upon the premises described therein until the same is paid," and reciting further that, "It being considered that this statement of fact will eliminate considerable controversy in the premises as to the construction of the instrument, * * * the same having been admitted by said interveners to be a mortgage lien," the order went on to provide:

"That all the property mentioned in the said intervening petition * * * be and the same is hereby considered to belong to the said Olivieri estate, subject to the mortgage lien of the said interveners, * * * the difference between the parties as to the amount due upon said mortgage to be hereafter duly determined by the court. It is further understood that the court, through its officers and receiver, is to make an effort to have this and other specific liens duly ascertained as to amount, and paid off with all convenient speed, and in case that sufficient money is not realized six months from this date, counsel for the said (interveners) shall have the right to move to set aside the agreement they have this day made, the same to be then subject to the discretion of the court as to being granted or not.".

None of the steps contemplated by the above order were ever taken, nor was the intervening petition by the Alvarados ever answered.

More than two years later, on August 12, 1909, there was another conference of counsel with the same District Judge, resulting in a stipulation that day filed with his approval which provided for an entirely different settlement between the parties. In this the Alvarados agreed to "accept in full of their entire claim, deed, mortgage or debt" the Limon estate here in controversy, and an adjoining tract of about 446 acres; they to pay a specified sum upon receiving clear title to the whole from the Olivieri heirs and the court. But, as had been the case with the proceedings contemplated in the previous order of June 7, 1907, none of the agreements embodied in said stipulation were ever carried into effect. They were to become effective only upon the entries of certain further decrees proposed which were never entered.

Thereafter, on May 18, 1910, a so-called final decree in Olivieri v. Olivieri was entered by the same District Judge, who also filed on the same day certain findings of fact made by him. Adelaida Olivieri, plaintiff in the case, was declared entitled to a certain undivided share of and interest in the property left by her father. To the Limon estate no express reference was made. Neither expressly nor by implication, so far as we can see, did the court undertake to adjudge that it formed part of her father's property, or that the Alvarados stood in any other relation to it than that of its owners. The case was continued for further supplementary or incidental proceedings.

It was after the entry of this "final decree," and nearly three years after Judge Rodey's order of June 7, 1907, that Jones took title to the property from the Alvarados, as above. Having thus acquired it, he filed a petition, in July, 1910, in Olivieri v. Olivieri, asking that the receiver in that case be ordered to deliver possession of it to him. In a motion or answer filed July 10, 1910, Franceschi opposed the order for delivery asked for. This alleged Franceschi to be assignee of the rights to five-ninths in all of the Olivieri inheritance, and one Juan Felix Olivieri, joined with him in the motion, to represent another one-ninth. It further alleged that the court had determined that the Alvarado claim upon the Limon estate was "only a mortgage claim and lien," and that any or all the Olivieri heirs were entitled to exercise "the right of legal redemption" against Jones or whoever claimed under him.

Notwithstanding Franceschi's opposition, after a hearing in the District Court, before Judge Jenkins, who had succeeded Judge Rodey, Jones was held entitled to possession, and on July 21, 1910, the court ordered its receiver to deliver possession to him, reserving all other questions raised under his petition for further determination. By a petition dated September 14, 1911, Franceschi asked the District Court to set aside the order of July 21, 1910, alleging that it had been entered "without any jurisdiction or right for making the same." This petition was brought by Franceschi alone. In it the above order of June 7, 1907, was set forth at length, and also parts of the above final decree entered May 18, 1910. On November 15, 1911, this petition was heard and overruled by Judge Jenkins' successor, Judge Charlton. Jones' possession under the title conveyed to him by the Alvarados has thus continued, without interruption, since July, 1910.

The only rights in the property asserted by Franceschi are, as appears from his bill, rights assigned to him by heirs of Felix Olivieri at various times between May 19, 1910, and October 26, 1912. Unless he had shown that the Olivieri succession owned the property and that Jones' grantors, the Alvarados, had only a mortgagee's interest capable of being conveyed by them to him, Franceschi's bill could not be maintained and was rightly dismissed.

[1] Various dealings relating to the property, between Felix Olivieri and the Alvarados, prior to their above lease to him on October 24, 1900, appear from the record. The earliest in date was an absolute conveyance of the property from him to them, in 1878, in payment of a debt. These dealings and the documents evidencing them are reviewed in the opinion of the District Court ordering dismissal of Franceschi's bill. The District Judge concluded from them that there was nothing to show said lease to have been anything except what it purported to be on its face, a lease of the property with the option to purchase. In this conclusion we agree. It follows that the Alvarados were owners, not mortgagees, of the property at the time of Olivieri's death, and that such rights as belonged to Olivieri by virtue of his leasehold interest were, at most, all that the Olivieri succession could claim.

[2] With regard to Judge Rodey's order of June 7, 1907, the District Court considered his subsequent order on August 12, 1909, as showing that the order of June 7, 1907, could not have been regarded by the parties or by the court as settling the nature of the Alvarado claim to the property. As to the recitals of consent in said order, evidence was held admissible to show the circumstances under which it was made, and the conclusion was reached that said order was intended only as "a provisional arrangement under which the parties and the court hoped that a sale of the property would be made, whereby every one would receive what was due to him." The District Court further found that there had in effect been a disaffirmance within the six months' period referred to in Judge Rodey's order; the whole plan having fallen through, and the decree contemplated by the order having thereupon been permitted to lapse. In these conclusions we find no error, and none, therefore, in the dismissal of Franceschi's bill because of them.

The same order of June 7, 1907, has been before us upon appeal in another case from the same District Court. Jones v. Pettingill et al., 245 Fed. 269, 277, 278, 157 C. C. A. 461. We find no reason to modify the views there expressed against its efficacy as a determination of title to the property here involved.

It is unnecessary, in view of the conclusions above stated, to discuss in detail the further defence asserted by Jones, that Franceschi had in any event estopped himself from asserting rights in the property adverse to Jones, such as the bill alleges, by his written agreement with Jones, dated October 29, 1912. This was an agreement made in view of a claim presented by Jones against the Olivieri succession, in Olivieri v. Olivieri, for unpaid rentals under the above lease; Jones having acquired the Alvarados' rights thereto. In consideration of

Jones' waiver of the claim thus presented, and of his agreement to dismiss his petition based upon them, Franceschi made sale to Jones of certain other property at an agreed price. The District Court found that Jones had consistently acted upon this agreement, and had given up the rents claimed by him. Franceschi fails to satisfy us that the District Court erred in so concluding.

The decree of the District Court appealed from is affirmed, and the appellee recovers his costs of appeal.