## SUN LIFE ASSUR. CO. OF CANADA v. CASANOVA.

### (Circuit Court of Appeals, First Circuit. September 5, 1919.)

### No. 1336.

1. COURTS ⬅➡339—ATTORNEY'S LIEN GIVEN BY LOCAL LAW ONLY RECOGNIZED BY FEDERAL COURT.

   The federal courts recognize no lien at common law in behalf of an attorney beyond that given by the local law.

2. CHAMPERTY AND MAINTENANCE ⬅➡5(3)—CONTRACTS WITH ATTORNEYS TO RECEIVE SHARE OF RECOVERY INVALID.

   Both by the common law and by Rev. Civ. Code Porto Rico 1911, § 1362, a contract by an attorney to conduct a litigation, to pay the costs and expenses, and to receive as compensation a share of the amount recovered, is champertous and invalid.

3. EXECUTORS AND ADMINISTRATORS ⬅➡87—RELEASE OF JUDGMENT IN OFFICIAL CAPACITY PRESUMED.

   Where one executed a release of a judgment individually, instead of in his capacity of administrator, as he should have done, it will be presumed that he intended to execute it in such capacity.

In Error to the District Court of the United States for the District of Porto Rico; Hamilton, Judge.

Action at law by Angel Rivera Casanova against the Sun Life Assurance Company of Canada. From an order directing issuance of execution, defendant brings error. Reversed.

Clifford H. Walker, of Boston, Mass. (Cecil E. Whitney and Ropes, Gray, Boyden & Perkins, all of Boston, Mass., on the brief), for plaintiff in error.

Joseph B. Jacobs, of Boston, Mass. (Jacobs & Jacobs, of Boston, Mass., and Willis Sweet, of San Juan, Porto Rico, on the brief), for defendant in error.

Before JOHNSON and ANDERSON, Circuit Judges, and ALDRICH, District Judge.

JOHNSON, Circuit Judge. This is a writ of error to an order of the United States District Court for the District of Porto Rico, directing the issuance of an execution upon a judgment recovered in that court on January 30, 1914, in an action brought by Luisa Rivera, the beneficiary named in a policy of insurance issued by the Sun Life Assurance Company of Canada, hereinafter for brevity called the company, upon the life of one Felix Rivera to recover $5,000, the amount of said policy.

March 18, 1914, the company sought to review this judgment by a writ of error entered in the Supreme Court of the United States, and gave a supersedeas bond in the amount of $6,000, and the case was docketed in the Supreme Court of the United States June 10, 1914. The policy upon which the action was brought was dated April 29, 1913, and insured the life of Felix Rivera Casanova in the amount of $5,000, payable on his death to his sister Luisa. The assured died July 21, 1913. An action to recover the amount of the policy was

brought by Luisa against the company in the United States District Court of Porto Rico, in which, after a trial, she recovered judgment on January 30, 1914. On February 27, 1914, she died, and on April 13, 1914, her father, Angel Rivera, as administrator of her estate, was substituted as plaintiff, in accordance with section 43 of the Code of Civil Procedure of Porto Rico. On October 28, 1914, the judge of the District Court ordered a satisfaction of the judgment to be entered upon two releases, signed by both the father and the mother, in which they represented themselves to be the sole and universal heirs of Luisa and the owners of said judgment. The release was executed by the father individually, and not in his capacity as administrator of Luisa. In these releases the father and the mother respectively confessed full accord and satisfaction of said judgment as to the interest of each and prayed that the said judgment might be fully discharged against the company.

Upon motion of the company, the defendant in the original action, the court ordered an entry to be made that judgment in the above action was discharged and satisfied. On January 29, 1917, the writ of error pending in the Supreme Court of the United States was dismissed, and the judgment of the court below affirmed.

On March 31, 1917, Willis Sweet and Eduardo Carpo Cintron, attorneys for the plaintiff in the original action, in behalf of the defendants in error and in their own behalf, moved in the court below that the releases on file in said court be stricken from its files, and that the satisfaction of the judgment, entered on the records of said court, be set aside and vacated, on the following grounds: That the parties executing said releases had no knowledge of the contents of the papers which they executed, being unable to read and write; that, as attorneys for the plaintiff in the original action, they had no notice or knowledge of the alleged settlement and release of judgment until after the affirmance of said judgment by the Supreme Court of the United States; that, as counsel for the plaintiff, they had an interest in said judgment based upon a contract made by Luisa with Eduardo Carpo Cintron, which was on the files of the court at the time of the alleged settlement; that, as counsel for said plaintiff, they had paid all costs required to be paid in behalf of the plaintiff and performed their duties of counsel in obtaining said judgment, and also as attorneys for the plaintiff in the Supreme Court of the United States; that the father and mother had neither right nor power to release the interest of counsel for the plaintiff in said judgment; or, if the court should hold that the interests of the father and mother had been released, then that the court should order execution to issue for the interest of counsel in said judgment to the amount of $2,500, with interest thereon at the rate of 6 per cent. from the date of said judgment, with costs; but, if the court should hold that the releases of said judgment were invalid, that it should order execution to issue for the entire amount of said judgment, with interest and costs. Annexed to this motion was a copy of the contract entered into by Luisa with Eduardo Carpo Cintron for his professional services, which is in form a special power of attorney authorizing him to appear in her name and behalf and cause the

judgment recovered by her to be executed, and empowering the said Cintron to collect from any officer of the court or the company, or from any of its agents, the amount of the aforesaid policy, either in cash or by check, for which he might receipt and collect as freely as if performed by herself; and for these services in the power of attorney she—

"gives, grants and transfers to Mr. Eduardo Carpo Cintron, in payment for his professional services, the sum of $2,500, which he will collect and retain for himself from the $5,000, which he may receive from the Sun Life Assurance Company of Canada, and which he will collect through the said District Court of America for the District of Porto Rico, or through any agent of the said company, and he shall deliver to the deponent, or to any person authorized by her to receive it, the sum of $2,500."

By an arrangement entered into by the said Eduardo Carpo Cintron with Willis Sweet, the said Sweet agreed to act as senior counsel with Cintron, as attorney for the plaintiff in the original action, and was to receive for his services 25 per cent. of any amount recovered in the suit, in cash, the said Cintron to furnish all money necessary for expenses to be incurred in bringing and prosecuting the action.

Upon this motion an order to show cause was made by the court below, to which the company made return, setting up the releases of judgment and the acknowledgment of satisfaction, and also that, after the judgment had been rendered in the original action, one Cristobal Pascual, upon information presented against him by the proper judicial officer of the district court of San Juan, Porto Rico, charging him with defrauding the Sun Life Assurance Company by falsely and fraudulently obtaining the issuance of a policy upon the life of Felix Rivera by representing him as a healthy person, when he knew at the time that the said Felix was in a dying condition with a pulmonary disease, appeared before the court and confessed his guilt, and was sentenced to imprisonment in the penitentiary on the island of Porto Rico for the term of one year. Annexed to the return was a copy of said sentence and of the information filed against the said Pascual, and the testimony of Angel Rivera thereon. The return also alleged that before the conviction of the said Cristobal Pascual the father went to the offices of the general agents of the company in San Juan and stated that it had come to his knowledge that a prosecution had been commenced against the said Cristobal Pascual; that he knew said policy of assurance had been obtained by fraud under false representation, but that neither he nor his wife were guilty of any fraud in the matter; and that they desired to release the company from all responsibility for payment of the judgment obtained upon the policy, and that, of their own free will, both he and his wife executed releases of the judgment. To this answer the plaintiff demurred, on the ground that the return constituted no legal reason for not ordering the issuing of said writ of execution; that in part the alleged reasons are res adjudicata; that the releases which were set up by the return had been stricken from the files of the court; that, if one Pascual committed a crime against the law, it did not appear directly or indirectly that the insured or the beneficiary, or any person or persons interested in their behalf, were par-

ties to the crime; but that, on the contrary, the beneficiary in said insurance policy and her administrator, who was substituted for her as plaintiff at her death, were the victims of said crime; that any confession by the said Pascual of an offense, with which neither the insured nor the beneficiary nor the substituted plaintiff were or are in any way connected, did not constitute a reason for not issuing an execution on said judgment. The court overruled the demurrer, except as it related "to the interest of the attorneys of the case as may be made to appear." The attorneys, Sweet and Cintron, then filed a motion in their own behalf that the court order the issuance of an execution "on the judgment heretofore entered in said cause, amounting to 50 per cent. of the amount due to this date, to wit, $3,005.85, which includes the interest, also the costs of court as duly allowed." This motion was supported by their affidavits. The court granted the motion and ordered execution to issue as prayed for. From this order the Sun Life Assurance Company has sued out a writ of error, returnable to this court, and the errors assigned are the finding that the attorneys, Sweet and Cintron, were entitled to one-half the amount of the original judgment and the ordering of an execution to issue for the same.

It is evident from the return of the company to the rule to show cause that the judgment could not have been obtained if the fraud that had been practiced had been shown.

But the court correctly held that this could not be shown in a hearing upon the motion before it, but might be done by a bill in equity to review the judgment, which, until it had been vacated by proper proceedings, must be held to be valid. We regret that the judgment has not been attacked in an independent proceeding, so that we would not be compelled to deal with a judgment as valid, against which charges of such gross fraud are alleged, and which, it is apparent from the record, could be easily proven.

The writ of error, however, brings before us only questions of law, and compels us to deal with the judgment as valid; but the effort of attorneys to obtain any part of a judgment resting upon such fraud as alleged does not call for a liberal construction of the contract upon which they rely.

The District Court has found that the father and mother as sole heirs of the original plaintiff, Luisa Rivera, have released their claim; but that they had no authority to release the interest of the attorneys therein, whatever it might be. It has found that the attorneys have an interest in the judgment by virtue of the contract which was made by the original plaintiff, Luisa Rivera, with Eduardo Carpo Cintron. That such a contract was made is uncontroverted, and the finding by the court that the attorneys, by virtue of it, had an interest in the judgment, is not a finding of fact, but only its conclusion from uncontroverted facts. The claim of the attorneys is not for taxable costs, such as a statutory allowance for attorney's fees, but for their compensation for legal services and repayment of disbursements for transportation, board of witnesses, and other disbursements.

[1] The federal courts recognize no lien at common law in behalf of an attorney beyond that given by the local law (Gregory v. Pike,

67 Fed. 837, 15 C. C. A. 33); and it is not claimed by counsel that, under the laws of Porto Rico, any such lien is given. The defendants in error have based their claim upon the contract made with the beneficiary in the policy, and the District Court has found that their interest in the judgment rests upon this contract, which must be construed by the local law of Porto Rico. In the affidavits of the attorneys, filed in support of their motion for the issuance of an execution, it appears that Mr. Cintron made an oral contract the latter part of September, 1913, with Luisa, and that under the contract he agreed to pay costs and expenses incident to the suit upon the policy; that he later reduced the terms of this contract to writing, but that, owing to her illness, she was unable to sign it. The unsigned contract was annexed to his affidavit to show what his agreement was, because he stated that he acted upon it as if it was signed; that he showed this unsigned contract to his associate, Mr. Sweet, and that it formed the basis of an agreement made with him by which he became associated as counsel in the case; and that the power of attorney which was signed by Luisa after judgment had been recovered was "intended to take the place of the unsigned contract, as we supposed the cause was finished." The affidavit of Mr. Cintron further discloses that he expended between $300 and $400 in the payment of witnesses and their transportation and all of the costs connected with the carrying on of the suit.

The power of attorney, in substance, authorizes the attorney, Mr. Cintron, to collect the judgment which had been rendered in favor of Luisa, and grants and transfers to him, in payment for his professional services, the sum of $2,500, "which he will collect and retain for himself from the $5,000 which he may receive from the Sun Life Assurance Company of Canada."

[2] The contract under which the suit was prosecuted was clearly champertous, as by its terms the attorney, Cintron, was not only to render professional services, but was to pay all the expenses of costs and litigation. Peck v. Heurich, 167 U. S. 624, 630, in which, on page 631 of the opinion, 17 Sup. Ct. 927, on page 930 (42 L. Ed. 302), the court quotes with approval part of the opinion of the Court of Appeals of the District of Columbia:

"We must regard an agreement by any attorney to undertake the conduct of a litigation on his own account, to pay the costs and expenses thereof, and to receive as his compensation a portion of the proceeds of the recovery, or of the thing in dispute, as obnoxious to the law against champerty."

Such an agreement is champertous also by the local law of Porto Rico.

The Revised Civil Code of Porto Rico of 1911, § 1362, is as follows:

"The following persons cannot acquire by purchase, even at public or judicial auction: * * * * * * * * *

"5. Judges * * * and officials of justice, the property and rights in litigation before the court in the jurisdiction or territory over which they exercise their respective duties, this prohibition including the act of acquiring by assignment.

"The prohibition contained in this number shall include the lawyers with regard to the property and rights, which may be the object of the litigation, in which they may take part by virtue of their profession and office."

In Jones v. Pettengill, 245 Fed. 269, 157 C. C. A. 461, this court has found a similar contract champertous under the law of Porto Rico.

The court therefore erred in holding that the attorneys acquired an interest in the judgment by virtue of the oral contract made by Mr. Cintron. The power of attorney of February 17, 1914, authorized Mr. Cintron to "retain the sum of $2,500 for his professional services, which he will collect and retain for himself from the $5,000 which he may receive from the Sun Life Assurance Company." Its language plainly imports that he was to have no part of the proceeds of the judgment until he had collected the whole of it. The power of attorney which was given had for its purpose the carrying into effect the oral agreement which had been made before the suit, and in reliance upon which the suit against the company had been prosecuted by the attorneys and the expenses of the litigation incurred.

[3] The court, having found that the father and mother of the beneficiary had released the judgment so far as their interests were concerned, and the attorneys having acquired no interest in the judgment by reason of their champertous contract, such interests would cover the whole judgment. The father and mother of the beneficiary, Luisa Rivera, were her sole heirs and her father was her administrator. Technically, a release of the judgment should have been signed by him in his capacity as administrator; but it will be presumed that, where a party neglects to execute a written instrument in the capacity in which he should execute it—and he is in fact qualified to execute it —that he intended to execute it in his said capacity. Yeaton v. Lynn, 5 Pet. 224, 229 (8 L. Ed. 105), where the court said:

"The two characters being united in the same person and that person being directed to execute the decree, it would seem reasonable to presume that he acted in the character in which he ought to perform the particular act, especially if it be necessary to give the act its full effect, and to make it rightful."

We think there was error in ordering an execution to issue in favor of the attorneys for the amount of their claim for professional services and disbursements.

The order of the District Court is reversed, with costs to the plaintiff in error, and the case is remanded to that court for further action not inconsistent with this opinion.