CULLEN, Ch. J., GRAY, O'BRIEN, WERNER and WILLARD BARTLETT, JJ., concur; VANN, J., absent.

Judgment of conviction affirmed.

---

In the Matter of the Application of HENRY B. SNYDER, Respondent, for Payment Out of Court of Certain Moneys.

ROGER FOSTER et al., Appellants.

1. ATTORNEY AND CLIENT — SETTLEMENT OF LITIGATION BY CLIENT WITHOUT THE CONSENT OF ATTORNEY. A clause in an agreement of retainer between attorney and client, prohibiting the client from settling

the litigation without the consent of the attorney, is void as against public policy and may be repudiated by the client.

2. ATTORNEYS' LIEN UPON PROCEEDS OF SETTLEMENT. A clause therein fixing the value of the attorneys' services at a certain percentage of the moneys to be recovered, so closely connected with the clause prohibiting a settlement as to be part of a single plan, falls in case the latter clause is repudiated by the client, and the attorneys in that event are entitled to establish a lien upon the proceeds of the settlement for their services according to their real value without reference to such clause.

*Matter of Snyder*, 119 App. Div. 277, reversed.

(Argued October 2, 1907; decided November 19, 1907.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 28, 1907, which reversed an order of Special Term appointing a referee to determine the value of services rendered by appellants as attorneys for the petitioner in the case of *Snyder* v. *De Forest Wireless Telegraph Company* and directed the disposition of certain moneys theretofore paid into court on the discontinuance of that action.

The facts, so far as material, are stated in the opinion.

*Roger Foster* for appellants. The dogma of the Appellate Division that an attorney's lien merely protects him in case the client has performed his contract and does not secure damages caused by a breach of the same, is untenable. (*Keane* v. *Keane*, 86 Hun, 159; *Jeffards* v. *B. H. R. R. Co.*, 49 App. Div. 45; *Carlisle* v. *Barnes*, 102 App. Div. 573; *Canary* v. *Russell*, 10 Misc. Rep. 597.) When a party to a contract, by his own acts, in violation of the same, makes its performance impossible, he is liable for damages to the other upon a *quantum meruit* for at least the reasonable value of the other's services and the amount of his disbursements in the partial performance thereof to the time of such breach. (*Doughty* v. *O'Donnell*, 4 Daly, 60; *Bovee* v. *Barrett*, 116 App. Div. 20; *Merrill* v. *I. & O. R. R. Co.*, 16 Wend. 586; *Leake on Contracts* [1st ed.], 65, 66; *Mavoe* v. *Pyne*, 3 Bing. 285.) This rule applies to a contract between a client and an attorney. (*Baxter* v. *Connor*, 119 App.

Div. 450; *Duke* v. *Harper*, 8 Mo. App. 296; *Gammons* v. *Johnson*, 69 Minn. 488; *Adsit* v. *Hall*, 3 How. Pr. [N. S.] 373.)

*George P. Breckenridge* for respondent. The petitioner was within his rights in agreeing to settle. (*Kuehn* v. *S. R. T. Ry. Co.*, 183 N. Y. 456; *Fischer-Hansen* v. *B. H. R. R. Co.*, 173 N. Y. 492; *Peri* v. *N. Y. C. R. R. Co.*, 152 N. Y. 521; *Poole* v. *Belcha*, 131 N. Y. 200; *Lee* v. *V. O. Co.*, 126 N. Y. 587; *Roberts* v. *Doty*, 31 Hun, 128; *Pilkington* v. *B. H. R. R. Co.*, 49 App. Div. 22.) The settlement did not constitute a breach of the contract of retainer. (*Strauss* v. *A. C. L. Ins. Co.*, 170 N. Y. 356; *Morehouse* v. *B. H. R. R. Co.*, 185 N. Y. 525; *Sullivan* v. *McCann*, 113 App. Div. 67; *Pilkington* v. *B. H. R. R. Co.*, 49 App. Div. 22; *Duke* v. *Harper*, 8 Mo. App. 296; *Neu* v. *B. H. R. R. Co.*, 113 App. Div. 446.) The fund on deposit should be divided as directed by the Appellate Division. (*Matter of Borkstrom*, 63 App. Div. 8; 168 N. Y. 639.)

HISCOCK, J. The appellants, who are practicing attorneys, made a written agreement with the respondent for the prosecution by them in his behalf of litigation against various parties under a plan of contingent compensation. Said agreement amongst other things originally provided that the attorneys should receive for their services one-third of the proceeds of said litigation or the proceeds of the sale of certain stock, and nothing else; also that neither party to the agreement should "settle any of said litigations without the consent of each of the other parties." Subsequently this agreement was modified so as to provide that the compensation should be one-half instead of one-third.

Various actions and proceedings were instituted under this retainer and, as is claimed by the appellants, services of much value were rendered to the client.

After a time Snyder entered into negotiations with the parties whom he was prosecuting for a settlement of the litigation and not only without the consent of his attorneys

but in spite of their protest made an agreement for such settlement for the sum of seventy-five hundred dollars. Still later a motion was made by the party with whom Snyder had made his agreement for an order settling and discontinuing the litigation for the sum agreed upon and to which motion both Snyder and the appellants were made parties. Notwithstanding the opposition of the latter and after the consideration of quite voluminous affidavits presented by the attorneys and the client respectively in opposition to and in support of the settlement, an order was made granting the motion upon payment into court of the sum of seventy-five hundred dollars " to respond to the lien of the plaintiff's attorneys."

Some time later a motion having been made by the client to withdraw one-half of this sum in accordance with the terms of the agreement between him and his attorneys, the court directed a reference to ascertain the value of the services which the attorneys had rendered in order that the amount of their claims and lien upon the fund might be determined before Snyder withdrew any money. This was done on the theory that Snyder by making a settlement in violation of the wishes of his attorneys had so broken his contract that the latter were no longer limited to the terms of their agreement for their compensation but were entitled to recover from the fund for the value of their services on the basis of *quantum meruit.* As already indicated, the Appellate Division took the view that this order was improper, holding that the attorneys were limited so far as their lien upon the fund in court was concerned to the compensation fixed by the original agreement and relegated for any further relief to an action against their client for breach of contract.

We think that the disposition made by the learned justice at Special Term was correct, and that it was error to reverse the order then made and substitute the one from which this appeal is now taken.

Some propositions involved in the appeal seem quite clear. The attorneys had a lien upon the moneys paid into court for

the amount or value of their services whatever it might be.
This was secured to them by section 66 of the Code, and in
addition the order allowing the settlement of the litigation
and directing the payment of the proceeds into court expressly
provided that the latter should "respond to the lien of the
plaintiff's attorneys" without any limitation upon the amount
for which the said lien should be allowed.

If the clause prohibiting a settlement without the consent
of the atorneys is valid, the client has prevented them from
carrying out their contract, and they are entitled to treat it as
terminated and recover the actual value of services rendered
before the breach without reference to the terms of the
original contract.

If the clause prohibiting the settlement without the consent
of the attorneys is void as against public policy, so that it may
be repudiated by the client, but yet is so connected with the
clause prescribing the percentage of recovery which the attor-
neys were to receive as compensation that the latter clause
falls with it, then again the attorneys must be entitled to
recover the value of the services rendered by them upon the
basis of actual worth.

While the adoption of either view, therefore, would render
necessary an appraisal of the value of appellants' services,
it is proper to determine which one shall prevail, assuming
that the latter one is permissible, and in this determination the
first and fundamental question will be as to the validity of the
clause prohibiting a settlement.

It has been decided so often and so fully that attorneys
may undertake litigation for a compensation contingent upon
their successful efforts that it is unnecessary to refer to the
decisions upon that point. But this court, so far as I am
aware, has never yet decided the naked proposition now urged
upon us that an attorney in furtherance of his contract for a
contingent compensation may reserve a veto power upon the
right of his client to make in good faith an honest settlement
of his claim, and I think it would be unwise and opposed to
sound public policy to so decide now.

In the first place, a decision upholding such a contract would confer upon one person occupying a position of trust toward another unusual power over the latter in the control and management of his own property, for we must not forget that the attorney has only a lien upon the client's cause of action which still remains the property of the latter. It is not too much to assume that such power would at times be the source of abuse as between the two parties.

But more important than any such personal and private considerations is the one of public concern that such contracts would prove added obstacles to that quieting of disputes and to that adjustment and settlement of litigation which always has been and always should be favored by the acts of legislatures, the decisions of courts and the expressions of public opinion. For, in my judgment, there is no need of long argument to demonstrate that such contracts would prove such obstacles. We have before us in this very litigation an illustration of the manner in which they would be utilized if so permitted to prevent settlements even when the attorney and client were involved in no other differences than those of an honest opinion about the amount which ought to be realized from the litigation. And if this result would have happened where reputable attorneys were prosecuting what we are entitled to assume was legitimate litigation with due regard for the rights of their client, it requires no long vision to see how frequently the power would be used by reckless or unscrupulous attorneys to prolong litigation for the sole purpose of forcing a defendant or client or both to pay additional tribute in order to secure that settlement and peace which they desired, and public policy commended.

It is urged that this power is necessary for the protection of attorneys. Courts are not unmindful of the fact that the system of contingent compensation has the merit of affording to certain classes of persons the opportunity to procure that prosecution of their claims which otherwise would be beyond their means, and that the attorney should be protected from any dishonest attempt to deprive him of his compensation.

On the other hand, no one having had an opportunity for observation can well close his eyes to the fact that this same system many times promotes litigation which is so unjustifiable that it does not even rise to the level of being speculative, and which being carried forward by unlawful and forbidden methods leads sometimes to the enforcement of unjust recoveries from unfortunate defendants, sometimes to the exaction of unconscionable compensation from ignorant or helpless clients, and always to stirring up discord and law suits. In view of the relief which courts render against settlements made with the dishonest purpose of cheating attorneys of their just compensation, it does not often happen that a reputable attorney undertaking legitimate litigation for a contingent compensation is deprived of his just dues, and there seems to be no substantial necessity for approving a form of contract which would enable unworthy members of the profession to increase existing evils through a power to manipulate and nullify any disposition upon the part of their clients to settle their differences.

While, as stated, the courts of our own state do not appear to have passed upon this precise question, whatever has been said upon this general subject of the right of a client to settle litigation without interference by his attorney confirms the view now being presented.

In *Lee* v. *Vacuum Oil Co.* (126 N. Y. 579) the attorneys for the plaintiff had an agreement for a contingent compensation with a clause providing that no settlement should be made without their consent. After recovery of judgment a settlement was made without the consent of the attorneys and subsequently a motion was made on behalf of them and of the client herself to vacate the settlement upon the ground of fraud. The question presented, therefore, arose between the attorneys and the opposite party and upon facts somewhat different from those before us. Still what was said by the court is pertinent to the general subject now being discussed. In its behalf Judge RUGER wrote as follows:

" We are of the opinion that the existence of such a lien

in favor of the attorneys does not confer a right on them
to stand in the way of a settlement of an action which is desired
by the parties, and which does not prejudice any right of the
attorneys.  We do not think that such an agreement deprives
a party of the right to control the management of his own
cause, and to determine when the litigation shall cease and
how far it shall be extended.  The client still remains the
lawful owner of the cause of action and is not bound to con-
tinue the litigation for the benefit of his attorneys when he
judges it prudent to stop, provided he is willing and able to
satisfy his attorneys' just claims.  In fact the lien under the
agreement was intended for and operates only as a security for
the attorneys' legal claims, and unless those are prejudiced by
the client's contract, she has unrestricted control of the sub-
ject of the action, and the terms upon which a settlement
shall be effected."

Fischer-Hansen v. Brooklyn Heights R. R. Co. (173
N. Y. 492) was an action brought to enforce the lien of the
plaintiff upon a judgment which he had recovered for a client
against the defendant, and which judgment the latter, after
notice of the attorney's lien, had secretly settled with the
client, who was financially irresponsible.  In writing in that
case in behalf of a unanimous court, Judge VANN laid down
principles which certainly guide us in the direction of the
conclusions already stated.  Referring to the lien given by
the Code to the attorney upon his client's cause of action, he
wrote as follows :

" The statute says that the lien (given by the statute) cannot
be affected by any settlement between the parties before or
after judgment, but does it mean that no settlement whatever
can be made without the consent of the attorney ?  It clearly
means this, unless the lien is impliedly transferred to the pro-
ceeds of the settlement.  But did the legislature, in its effort
to protect attorneys, intend to sacrifice the client by prevent-
ing him from making an honest settlement of his own cause
of action ?  Did it intend to overturn the ancient and hon-
ored rule of law that settlements are to be encouraged, by

giving the attorney power to insist that the litigation must continue until he consents that it should stop? Did it intend to so tie the hands of the client that he could not settle his own controversy without the permission of his attorney? A cause of action is not the property of the attorney, but of the client. The attorney owns no part of it, for a lien does not give a right to property, but a charge upon it. As it is merely incidental, and for the purpose of security only, it would not be reasonable to hold that the legislature intended it should be the means of blocking an honest and genuine adjustment of controversies. We think the lien is subject to the right of the client to settle in good faith, without regard to the wish of the attorney, and we so held in the *Peri Case* (152 N. Y. 521), where we declared that 'the existence of the lien does not permit the plaintiff's attorney to stand in the way of a settlement.' * * * The legislature did not intend to make the lien the chief thing, nor to compel the client to abdicate his position as principal in favor of the agent or attorney whom he employed in order to secure his rights. It did not intend to prevent him from dealing with his own property as he saw fit, provided he exercised his honest judgment and took no advantage of his attorney."

In other states an abundance of authority is to be found for the doctrine that a clause prohibiting the client from making a settlement of his litigation without the consent of his attorney is void as against public policy. (*Huber* v. *Johnson*, Supreme Court of Minnesota, 70 N. W. Rep. 806; *North Chicago, etc., R. Co.* v. *Ackley*, 171 Ill. 100; *Lewis* v. *Lewis*, 15 Ohio, 715, 716; *Key* v. *Vattier*, 1 Ohio, 132; *Davis* v. *Webber*, 66 Ark. 190.)

These views lead to the conclusion that appellants are not entitled to recover from their client upon the *quantum meruit* upon the ground that the clause prohibiting a settlement was legal and, therefore, his acts in disregard thereof a breach of contract.

But I do think that they may still recover upon that basis upon the other theory suggested.

The clause in the contract fixing the value of the services at a certain percentage of the recovery was connected with the provision that the attorneys should have a voice in any settlement and in determining the amount of any recovery by that process. The two clauses were manifestly part of a single plan. Therefore, when the client takes advantage of the invalidity of one clause and repudiates it, the other one cannot stand alone but must fall with it, and the result of this again is to permit the attorneys to recover for the services which they have actually rendered according to their real value and independent of the original provision in the contract upon this subject. (*Davis* v. *Webber, supra; Gammons* v. *Johnson*, 69 Minn. 488; *Stearns* v. *Felker*, 28 Wis. 594.)

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs.

EDWARD T. BARTLETT, J. (dissenting). I agree with my brother HISCOCK that the appellants, the attorneys, are entitled to some form of relief in this proceeding. I am, however, unable to agree with the conclusion reached by him that an agreement between an attorney and client, creating a lien upon the cause of action, cannot lawfully contain the provision that neither party shall settle the litigation without the consent of the other.

If it be the fact that this court has never passed upon the validity of such a clause in a contract, I am of opinion that it is valid. I see no reason why counsel entering upon a long and difficult litigation for an impecunious client should not protect himself against a premature and ill-advised settlement of the litigation. These contracts are under the strict supervision and scrutiny of the court, and I am unable to see anything in contravention of public policy when this clause appears to have been entered into in good faith by both parties. In the absence of such a clause it has been frequently held in this state and elsewhere that the client may negotiate an honest and reasonable settlement at any time.

There is no reason, in my judgment, why this right cannot be waived.

The Special Term held that the attorneys had a lien upon the $7,500.00 paid into court on the settlement, and that the original contract having been abandoned by the action of the clients, it was competent for the attorneys to go before a referee and prove the reasonable value of their services. If the services, however, were proved to exceed in value the $7,500.00 paid into court, the clients would, in my opinion, be liable for the excess in an action by the attorneys to recover damages for a breach of the contract.

The order of the Appellate Division should be reversed and the order of the Special Term modified so as to provide that if the attorneys prove their services to be in value exceeding the sum of $7,500.00 paid into court, that they may bring an action against the clients to recover this balance as damages for a breach of the original contract, and as so modified affirmed, with costs and disbursements in the Appellate Division and in this court.

CULLEN, Ch. J., O'BRIEN, HAIGHT, VANN and CHASE, JJ., concur with HISCOCK, J.; EDWARD T. BARTLETT, J., reads dissenting opinion.

Ordered accordingly.