MARCELINA FRANQUI DE ALFARO, ETC., Plaintiff and Appellant-Appellee, *v.* FUERTES HERMANOS, *S. en C.,* Defendant and Appellee-Appellant.

No. 5655.   Argued May 2, 1932.—Decided March 16, 1933.

*García Méndez & García Méndez* for plaintiff and appellant-appellee. *J. Henri Brown, C. Ruiz Nazario, G. E. González,* and *G. Benítez Gautier (Salvador Suau* and *F. Prieto Azúar* on the brief) for defendant and appellee-appellant.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This case was decided by a judgment rendered by the District Court of Arecibo ordering the defendant to pay to the plaintiff $2,688, as damages, and the costs and expenses of the action.

After the judgment became final (*firme*), the successful party filed her memorandum of costs and disbursements wherein she included the following items: Marshal's fees, $1; Clerk's fees, $10; Witness' fees, $12; Traveling expenses of Dr. Sánchez from Isabela to Arecibo, $6; Traveling expenses of Dr. Cardona from Aguadilla to Arecibo, $6; and Attorney's fees, $2,000. Total, $2,035.

The losing party accepted the first two items of the memorandum and objected to the rest as excessive. It asked that the attorney's fees be fixed at a sum not in excess of $250.

The court heard both parties and finally decided to approve the first four items in full and to reduce the last item to $600.

Feeling aggrieved by that decision, the defendant appealed to this Supreme Court. The record which it has brought up consists of copies, certified by the clerk, of the judgment which decided the case, the memorandum of costs and disbursements, the opposition thereto, the order of the court, the notice of appeal, and the transcript of the evidence certified by the stenographer and approved by the trial judge.

The evidence introduced by the defendant-appellant at the hearing on the memorandum consisted in the testimony of Attorney Fernando B. Fornaris, who stated that he made a brief study of the record of the case, and that in his judgment the services of the attorney for the plaintiff were worth from $300 to $350. The plaintiff then produced her evidence. She first presented the stenographic record of the case, which does not form part of the transcript prepared for this appeal, and later the testimony of attorneys Manuel A. García Méndez and Luis Mercader. The former was one of the attorneys in the case. He described the complaint, wherein over $6,000 was claimed, the matter of the change of venue which followed, the motion to strike which was filed, the demurrers, and the trial, which lasted "one day, from early in the morning until close to nightfall." He stated that during the trial important questions of law were raised, such as those appearing at pages 10, 52, 60, 61, 64, and 73 of the record. The injury to the plaintiff, who underwent a skillful surgical operation, was the subject of considerable argument. The case was appealed and the judgment affirmed by the Supreme Court. The client called at his office about ninety times during the course of the litigation. His office devoted about 15 days to the investigation and study of the case. Attorney Mercader, after referring to the case, stated that in his judgment the services were worth not less than $1,200. Attorney Manuel A. García Méndez again testified, thus:

"I again state that in this case the plaintiff did not agree to pay her attorneys García Méndez & García Méndez a specified sum, but contingent fees, subject to the outcome of the action, and we charged 50% of the amount of the judgment, with interest at the legal rate until payment, except that from the total amount were to be deducted the expenses and medical fees, and the plaintiff would pay us 50% of the balance.

Answering questions propounded by Attorney Prieto Azúar, he stated:

"Q. You were to share in the contingent result of the case?—A. Yes, sir; contingent fees. If I did not win the case I did not make a cent.

"Q. Do you recall the meaning of champerty at common law, and that such a contract is forbidden?—A. It is not forbidden in Puerto Rico.

"Q. Professional ethics?—A. It is not in conflict when the Legislature itself has said so, as for instance, in cases of workmen's compensation, where the statute provides what a lawyer may charge; but in special cases, such as damage suits, wherein the final result is subject to the contingencies of the action, in such cases it is more than honest to charge 50% of the recovery, and we have done this because it is our custom to be honest in our dealings.

"Q. Do you not believe that the United States practice is followed in Puerto Rico, and that an attorney, however honorable he may be, as the colleague is, is morally forbidden to take a case on a contingent basis?—A. If I thought differently I should not have accepted 50%. I accepted it in good faith and because it is honest and permissible in Puerto Rico."

The defendant and appellant assigns four errors in its brief. The first refers to the item of $12 for witness' fees, the second to the traveling expenses of the physicians, and the third to the allowance of $600 for attorney's fees. The fourth is formulated thus:

"The District Court of Arecibo, Puerto Rico, incurred in manifest error in allowing any sum whatever for attorney's fees."

We shall not stop to consider the first three errors. The court gave its reasons for its decision, having studied the facts of the case in the light of the precedents established by this Supreme Court itself. We find nothing illegal or unreasonable in its conclusions. Moreover, the appellant has not filed a complete transcript of the record in order to place this Supreme Court in the same position as was the district court when it entered the order appealed from.

The fourth error we shall discuss to its full extent. The assignment is not well formulated. It does not in itself furnish an idea of the question which it raises. Nevertheless,

it is later fully argued, and also fully refuted by the opposing party, and will be considered. It involves the question of contingent fees (*quota litis*).

Summarizing its argument, the appellant maintains that it is not proper to allow attorney's fees in this case:

"(*a*) Because section 1362 of the Civil Code, construed by the United States Circuit Court of Appeals in the case of *Jones* v. *Pettingill*, 245 F. 269, expressly forbids the 'assignment' of any interest to the attorney taking part in litigation, and the allowance of fees would be equivalent to sanctioning such an assignment.

"(*b*) Because a case of champerty clearly appears from the transcript of the evidence in this case.

"(*c*) Because the American cases uniformly condemn contracts tainted with champerty, as do the Spanish cases and commentators, and also hold that the question may be raised by a third person as soon as the evidence in the case reveals the illicit contract.

"(*d*) Because it is a proverbial practice in American courts to refuse to hear a party who, in asserting a right, does not do so with clean hands.

"(*e*) Because the memorandum of costs in the instant case is based on a transaction which is contrary to the soundest judicial tradition, and is doubly censured by the law and by ethics, being at the same time *malum prohibitum* and *malum in se.*"

Contracts for contingent fees were considered illegal under the Spanish as well as under the English and American law.

Law XIV, title VI, of the Third *Partida*, reads as follows:

"LAW XIV.—*What reward advocates should receive when they perform their duties properly, and what agreement they are forbidden to make with the party whom they assist.*

"A party should acknowledge the service performed by an advocate in a suit, when he acts faithfully, by rewarding him and paying him his fee, according to his agreement with him. And for the reason that men, through their desire to gain suits and sometimes influenced by the artifice of advocates, promise the latter larger fees than they should do, or make contracts with them to their own prejudice, we order that an advocate must accept a fee from his client in proportion to the character of the suit, whether it is great or small, and one in proportion to his learning or to the labor which he performs, so that the largest fee that there may be should not

amount to more than a hundred maravedís, no matter how large the claim may be, and below that sum, according to the nature of the suit. We also forbid any advocate to make a contract with a party to a suit to receive a certain portion of the thing concerning which the action is brought, for the wise men of the ancients were of the opinion that when an advocate made an argument where such a contract existed, he would exert himself to do everything in order to gain the suit, by foul means or fair. They also forbade this for another reason, because if advocates were permitted to make a contract of this kind with the parties for whom they appear, no one could find an advocate, who would be willing to argue his case, or assist him, otherwise than under such an agreement, which would be contrary to justice and a very injurious thing for the people. Where, however, an advocate should be so bold as to make a contract of this kind with the party for whom he appears, we order that, after this has been proved, he shall not have authority to argue a case for anyone else in court, as being an infamous person, and, moreover, that the contract which he made with the party shall not be valid." 3 *Los Códigos Españoles Concordados y Anotados* 87.

And law XXII, title XXII, book V, of the *Novísima Recopilación,* reads as follows:

"LAW XXII.—*Prohibition against the making of agreements by advocates with the parties, on condition of winning the action, or prosecuting it at the expense of the advocate.*

"The same in the ordinances of Medina, 1849, Chapters 56 and 70, and there at Chapter 13.

"We order that no advocate shall make a contract or agreement with the party whom he should assist, which shall grant him a certain quantity of maravedís, or of any other thing, on condition that the suit be won, and any one who should do this shall be suspended from the profession of advocacy for the term of six months; and similarly that advocates shall not assure the parties they assist that they will obtain a recovery, for any amount, under pain of paying twice the said amount. And we order that neither advocates nor solicitors shall agree to bring and conclude cases at their own expense, for a certain amount, under pain of fifty thousand maravedís for each of them who should do the contrary, for our chamber, and who for that reason, for doing the contrary, should incur the said penalty without any other judgment. (Law 8, title 16, book 2 R.)" 8 *Los Códigos Españoles Concordados y Anotados* 96.

The authors of the Civil Code were less explicit than those of the *Partidas* and the *Recopilaciones*. They limited themselves to providing, in section 1459 of the code:

"Art. 1459.    The following persons can not acquire by purchase, even at public or judicial auction, neither in person nor by an agent:
"1.
"2.
"3.
"4.

"5. Associate justices, judges, members of the department of public prosecution, clerks of superior and inferior courts, and officials of justice, the property and rights in litigation before the court in the jurisdiction or territory over which they exercise their respective duties, this prohibition including the act of acquiring by assignment.

"From this rule shall be excepted the cases in which hereditary actions among coheirs are involved, or assignments in payment of debts, or security for the goods they may possess.

"The prohibition contained in this number shall include the lawyers and solicitors with regard to the property and rights, which may be the object of the litigation, in which they may take part by virtue of their profession and office."

In discussing the above provisions, Manresa says:

"It has been argued whether among the disabilities of solicitors and attorneys is that of entering into a contract of *quota litis*. It consists, as we know, in the stipulation that the attorney or solicitor is to take for himself a proportionate part of the thing involved in the litigation, if the judgment is favorable. Bearing this in mind, we have no doubt that the section under discussion does not mention such a contract; but inasmuch as among the disabilities of attorneys and solicitors is the act of acquiring by assignment, and the effectiveness of a contract for contingent fees necessarily implies an assignment, we are of the opinion that the annulment of such an agreement, traditionally considered illicit, could be successfully sought on the basis of subdivision 5 of section 1459 alone." 10 Manresa, Commentaries on the Civil Code, 107.

Another great Spanish commentator, Scaevola, is of a different opinion.    He states:

"Goyena is of the opinion that the prohibition to purchase, imposed on lawyers, carries with it, implicitly, a prohibition against the so-called agreement of *quota litis,* for such an agreement supposes the sale or assignment of a part of the thing or right which is the object of the suit.

"Baudry Lacantinerie and Leo Saignat are of the same opinion, which is contrary to that of other French jurists such as Duvergier, Demolombe, Aubry et Rau, and Laurent, who attribute to such an agreement an illicit consideration, which therefore renders it null, by virtue of other precepts of the Civil Code.

"*     *     *     *     *     *     *     *

"We adhere to the opinion of Laurent and Aubry et Rau, for the rigid text of the last paragraph of section 1459 offers much less elasticity than is required to classify the agreement of *quota litis* as the purchase of property or rights which are the object of litigation.

"The participation of the champion in the victory of the winner may be altogether immoral, although there is much of the conventional in it, but it is not an instance of purchase or assignment of rights in litigation." 23 Mucius Scaevola, Civil Code, 429, 430.

Section 1459 of the Spanish Civil Code is the same as section 1348 of our Revised Civil Code, 1930 ed., and section 1362 of the 1911 edition. This Court has construed its provisions in several cases, but the question now raised has not been squarely decided in any of them. It is the Circuit Court of Appeals for the First Circuit which has decided a case, on an appeal from the District Court of the United States for the District of Puerto Rico, which is directly applicable. We refer to the case of *Jones* v. *Pettingill,* 245 F. 269.

The contract there involved was as follows:

"I agree to pay to Messrs. Pettingill and Leake, my lawyers, the half of what I may receive if the judgment of the court is favorable in a suit which I am going to bring in the Federal Court against Antonio Olivieri, executor of Félix Olivieri, if said lawyers pay all the costs and expenses of said suit, and carry it to a conclusion. In case of settlement the lawyers shall receive the half of whatever sum is paid to me in settlement of their fees. In accordance with

the judgment of the court, I will pay to them and divide with them in proportion of one-half of whatever I may receive by order of the court.''

And the attorneys bound themselves thus:

''We agree to bring this suit in favor of [said Adelaida], paying all costs and expenses, and carrying it to a conclusion, either by settlement or judgment of the court.''

The final clause of the contract read:

''Moreover it is agreed that, in case of settlement by agreement, such settlement shall not be valid, if not made in the presence and with the consent and assistance of the two parties to this contract.''

The Circuit Court of Appeals said in its opinion:

''The principal question raised before us was not raised by the answer to the bill, nor at any time during the proceedings in the District Court, until Jones alleged in his petition for reconsideration, above mentioned, as ground for reconsideration, that the District Court had erred in not holding the contract sued on 'contrary to good morals, champertous, and void,' and therefore a contract upon which no recovery could be had. In denying the petition the District Court held, as appears from its opinion dated May 29, 1915, that Jones could not attack the validity of the contract for the first time after final decree, nor at any time 'when not a party to the contract'; and discussion of its validity was regarded as unnecessary. It also held Jones estopped in any case from raising the question, by acceptance from Pettingill of the amount required for 'redemption' of the interest claimed by him, as determined by the master.

''The above objections to the validity of the contract raise a question of public policy, apparent from the record and involving no disputed questions of fact. The contract is annexed in full to the bill, both in Spanish and in English. If it appears from the record to be such a contract as a court of equity should not lend its aid to enforce, the above objections go to the foundation of the rights asserted in the bill, and are objections such as the District Court might have considered of its own motion, whether suggested by the parties or not, and such as might have been urged in arrest of judgment. They are also such objections as an appellate court may consider of its own motion, whether raised below or not. *Primeau* v. *Granfield,* 193 Fed. 211, 114 C.C.A. 549; *Griggs* v. *Nadeau,* 221

Fed. 361, 363, 137 C.C.A. 189. It is said that they are not properly raised by the assignments of error; but this court may, under its rules 11 and 24, paragraph 4 (150 Fed. XXVII, XXXIII, 79 C.C.A. XXVII, XXXIII), notice at its option plain errors not assigned, and has repeatedly done so.

"That this is a contract which 'would have been regarded as champertous and void under the old common law' is conceded; but it is said that there is no jurisdiction wherein the commonlaw rule has not been changed to a large degree, the extent of change varying in different jurisdictions. We shall assume, in view of *Stanton* v. *Embrey*, 93 U. S. 548, 23 L. Ed. 983, *McPherson* v. *Cox*, 96 U. S. 404, 24 L. Ed. 746, *Taylor* v. *Bemiss*, 110 U. S. 42, 3 Sup. Ct. 441, 28 L. Ed. 64, *Ball* v. *Halsell*, 161 U. S. 72, 80, 16 Sup. Ct. 554, 40 L. Ed. 622, and *Nutt* v. *Knut*, 200 U. S. 15, 21, 26 Sup. Ct. 216, 50 L. Ed. 348, that the contract is not to be held either void or voidable, merely because the attorney's compensation is made contingent upon success or amount of recovery; it having been free, so far as appears, from fraud, misrepresentation, or unfairness. The above decisions relate to contracts for services in prosecuting claims against the United States or before tribunals acting under the authority of the federal government.

"But the agreement that the attorneys shall have a contingent fee of 50 per cent is by no means the most objectionable feature of this contract. They undertake in it to pay all the costs and expenses of the contemplated suit, and it provides that no settlement by their clients shall be valid, unless they are present and consent. Further, although there is no assignment by her to them, in express terms, of part of her interest, she is made to agree with them, who do not claim to have had any interest of their own in the property, 'to pay to and divide with them in proportion of one-half of whatever I may receive by order of the court.'

"*    *    *    *    *    *    *    *

"It may be that there are jurisdictions in which the local legislation would afford ground for upholding some even of the above provisions; but, generally speaking we think it clear that a contract between attorney and client, for contingent compensation for professional services whereby the attorney is to pay the entire expense of litigation, to control its settlement, and to be jointly and equally interested with the client in the property involved when recovered, is a contract so far contrary to the policy of our law that a court of equity will not enforce it.

"*    *    *    *    *    *    *    *

"As to the stipulation purporting to invalidate any settlement of the contemplated litigation by the client, unless made in the attorneys' presence and with their consent, we can have no hesitation in regarding it as against public policy and void for that reason. The District Court for Porto Rico so regarded a stipulation to the same effect, in a contract similar in many respects to this, in *Rodríguez* v. *Cueli,* 1 Porto Rico Fed. 272, 275. *In re Synder,* 190 N. Y. 66, 82 N. E. 742, 14 L.R.A. (N. S.) 1101, 123 Am. St. Rep. 533, 13 Ann. Cas. 441, and *Wellen* v. *Jersey City,* 68 N. J. Eq. 659, 61 Atl. 459, 66 Ann. Cas. 442, may also be referred to.

"While the local law here involved—i. e., the law of Porto Rico—deals with the above questions from a somewhat different point of view, and its policy is to be gathered more from Codes based on the civil law, or from commentators thereon, than from reported decisions, we find no reason to believe that contracts like that here in question are regarded in Porto Rico as any less obnoxious to the policy of the law than they are in the United States. The well-recognized grounds for believing danger to the public interest to be inherent in them, can be no less strong there than here.

"By section 1362 of the Porto Rican Civil Code of 1902, which took the place of an earlier Code containing like provisions, judges, public prosecutors, clerks of courts, 'and officials of justice' are made incapable of acquiring by purchase the property and rights in litigation before the court in which they exercise their respective duties; including in this prohibition acquisition by assignment. The same prohibition expressly includes—'the lawyers, with regard to the property and rights, which may be the object of the litigation, in which they may take part by virtue of their profession and office.'

"The Spanish Civil Code contains similar prohibitions, and the Spanish authors agree that under Spanish law an agreement by an attorney to prosecute litigation for an interest in the property involved is forbidden, and therefore void."

Does the legislation in force absolutely forbid the agreement of *quota litis,* as did the *Partidas* and the *Nueva* and *Novísima Recopilación?*

We have already seen that two great commentators of the Spanish Civil Code differ in their views on the question. Manresa understands that it does, Scaevola that it does not. The latter adheres to the letter of the statute; the former seeks to arrive at its spirit in the light of the old provisions.

We have just seen the construction given to the statute by the Circuit Court of Appeals for the First Circuit. It is inclined to the affirmative, but does so as an added argument after having arrived at the conclusion that the contract involved in the case before it was against public policy, and void for that reason, as a result of the stipulations is contained. Had it considered only section 1362 of the Civil Code, which forms part of the provisions relative to the contract of sale, perhaps it would have hesitated to decide whether or not it contains an absolute prohibition against the contract of *quota litis*. It contains no express prohibition. Perhaps there is an implicit prohibition, although it is very significant that, after the existence of legislation so clear and precise as that of the *Partidas* and *Recopilaciones*, the Code should not have followed it, if indeed it was intended to follow it. Possibly the Spanish lawmaker abstained from a precise expression of his views, so that the special circumstances of each case should lead, as they led the Circuit Court of Appeals in the case of *Jones* v. *Pettingill, supra,* to the determination of nullity.

On reviewing the American cases, we find a large number of decisions holding that a contract whereby an attorney agrees to prosecute a suit and to charge for his services, if the result is favorable, a percentage of what his client may recover, is not void in itself. Its nullity depends on the surrounding circumstances. In order not to lengthen this opinion unduly, we shall limit ourselves to the citation of two cases decided by the Supreme Court of the United States, *Taylor* v. *Bemiss*, 110 U. S. 42, and *Wright* v. *Tebbitts*, 91 U. S. 252.

In the first of these cases, Mr. Justice Miller, speaking for the Court, said:

"It remains to be considered whether there is in this contract of employment anything which, after it has been fully executed on both sides, should require it to be declared void in a court of equity, and the money received under it returned. It was decided in the case *Stanton* v. *Embrey*, 93 U. S. 548, that contracts by attorneys for

compensation in prosecuting claims against the United States were not void because the amount of it was made contingent upon success, or upon the sum recovered. And the well known difficulties and delays in obtaining payment of just claims which are not within the ordinary course of procedure of the auditing officers of the government, justifies a liberal compensation in successful cases, where none is to be received in case of failure.

"Any other rule would work much hardship in cases of creditors of small means residing far from the seat of government, who can give neither money nor personal attention to securing their rights.

"This, however, does not remove the suspicion which naturally attaches to such contracts, and where it can be shown that they are obtained from the suitor by any undue influence of the attorney over the client, or by any fraud or imposition, or that the compensation is clearly excessive, so as to amount to extortion, the court will in a proper case protect the party aggrieved.

"While fifty per cent. seems to be more than a fair proportion in the division between client and attorney in an ordinary case, we are not prepared to assume that it is extortionate for that reason alone, and the testimony of the lawyers on that subject, taken as experts, does not justify such a conclusion. In the case before us, it is beyond dispute that the attorneys of Mrs. Bemiss exercised no influence over her whatever in adjusting the amount of the fee stipulated in the agreement. They had never known her until this employment, and it was through no suggestion of theirs or any agent of theirs that she applied to them. Her first letter to them on the subject made the offer of fifty per cent., and no more was asked for by them.

"The evidence of two of the judges who composed the court shows that the case was a difficult and complicated one, and that both Taylor and Wood attended to it vigorously, and gave it much time and attention, and that it was in court a considerable time.

"It seems probable that Mrs. Bemiss was an impatient and not very wise woman, but there is no evidence of such weakness of mind as to incapacitate her from making a contract, and there is absolutely no evidence of any advantage taken of her at any stage of the proceeding. On the contrary, the payment by these principal attorneys of two-fifths of the fee they had contracted for to other attorneys employed by her without consulting them, for which she was bound while they were not, shows anything but harsh or oppressive conduct, and would go far to mitigate any objection to enforcing the contract founded on the idea of excessive compensation."

In the second case cited, the opinion was written by Mr. Chief Justice Waite. One of the errors assigned was as follows: "Because it (the contract) is champertous, as it was a bargain to pay one tenth of whatever might be collected." Discussing this error, the Court said:

"In *Wylie* v. *Coxe,* 15 How. 415, we decided that an agreement to pay a reasonable percentage upon the amount of recovery was not an illegal contract. Here, after the service had been rendered, and after, as was supposed, the claim had been secured, Wright agreed to pay ten per cent of the amount eventually realized as compensation for the labor done. We see no reason to find fault with this; and the jury seem also to have adopted this rule, which the parties established for themselves, as presenting the true criterion for estimating the reasonable value of the services rendered."

It seems, therefore, that the most just rule is not to condemn the agreement in itself, but to judge it according to the circumstances which surround it. It is something which has always been regarded with prejudice, which should be avoided, since the fundamental objections to it are many, but the modern lawmaker, openly facing the situation, has realized that there are cases where it would be difficult for justice to be defended except in this manner, and he has preferred to let the facts speak for themselves in each transaction.

Applying this rule, an agreement such as that made in the case of *Jones* v. *Pettingill, supra,* will always be held unenforceable by the Puerto Rican courts, for there it was not only agreed to pay a percentage, but also that the attorneys were to pay the expenses of the action, and the party was bound to such an extent that it agreed not to settle the case without the intervention and knowledge of the attorneys, so that the transaction might be interpreted as an assignment of property involved in litigation, which is what the Civil Code expressly forbids. Here the facts only show that the compensation of the attorneys was subject to the outcome of the case, and was fixed at a sum proportionate to the amount the plaintiff

should recover. It does not appear that the attorneys agreed to pay the expenses. It does not appear that they exercised undue influence on their client, or that the latter was so bound to them as to have lost his freedom of contract. There is no indication of fraud. The very spontaneity with which one of the attorneys for the plaintiff revealed the matter, after the defendant in its opposition had admitted that the services were worth $250 and its only witness had just testified that they were worth from $300 to $350, shows that everything was done openly, under the impression that nothing contrary to the law had been done.

The transaction is not, in truth, satisfactory. In a case such as the present one, fifty per cent seems excessive. It is a practice which should not be favorably received by the courts. The conscience of the judge is vexed, for he would like to act in such a way as to fix a course more in harmony with justice, such as that of arriving at the fees by means of a just valuation of the services, after they have been rendered, regardless of the amount recovered in the case, but we do not believe that, taking into consideration the law and the cases, the facts of this case permit the court to reject the claim flatly on the ground that the contract is void.

The Puerto Rican lawmaker has himself lent his express sanction to agreements of *quota litis* by providing in section 49 of Act No. 85 of 1928, regarding workmen's compensation, Session Laws of 1928, pp. 630, 636, that—

"Any contract, agreement, or stipulation between the injured workman, or his heirs in accordance with this Act, and an attorney, for the payment to the said attorney of a fee contingent upon the result of the trial, shall be void and have no legal force or effect unless it be in writing and approved by the Industrial Commission or the judge of the corresponding court, as the case may be.

"Any agreement for the payment of fees to an attorney in an amount in excess of ten (10) per centum of the amount received by a workman as compensation, shall be illegal and void, and the making of such contract, or the actual receipt by the said attorney of an amount in excess of ten (10) per centum of the amount recovered

at the trial, shall be illegal and void, and shall constitute misconduct on the part of the said attorney, punishable by suspension or disbarment after proper proceedings have been instituted against the offender in accordance with the existing laws.''

The question having been thus examined from its various angles, we conclude that the fourth error assigned does not exist either, and that as a result the order appealed from must be affirmed.

The plaintiff also appealed from the order fixing the fees at $600. On March 15, 1932, the defendant moved for a dismissal of the appeal on the ground that the transcript of the evidence had not been filed. The plaintiff opposed the dismissal, on the basis of a certain order entered by the lower court, to the effect that the same transcript should serve for both appeals, and the question was decided in the manner set forth in our opinion of April 8, 1932, which is part of the record.

The defendant moved for a reconsideration, and both parties were heard on the motion at the hearing on the merits of the appeal. As a result of the new arguments of the defendant, and of a greater elucidation of the facts as they actually occurred, and since the plaintiff did not agree to pay her share of the cost of the transcript, we must conclude that there was no proper basis for the entry of the order by the lower court, and that it can not benefit the plaintiff.

We insist that separate transcripts should not be filed on cross-appeals from the same judgment, where the records are the same, but we agree that there should be an agreement between the parties as to the payment of the expenses. It would not be just to impose the entire burden of such expenses on only one of the parties.

As a result, we must reconsider our previous decision, and the appeal taken by the plaintiff is dismissed because it was not perfected in time.

Mr. Justice Wolf concurs in the judgment.